Filed 12/2/14  P. v. Park CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SUNG HO PARK,<br><br>    Defendant and Appellant. | 2d Crim. No. B249730<br>(Super. Ct. No. SA078815)<br>(Los Angeles County) |

Sung Ho Park appeals from the judgment entered after a jury convicted him of offenses involving three victims.  As to Rebecca W., he was convicted of forcible oral copulation (Pen. Code, § 288a, subd. (c)(2)(A))[1] and sexual battery while the victim was restrained.  (§ 243.4, subd. (d).)  As to Y.Y., he was convicted of assault with intent to commit rape, sodomy, or oral copulation during the commission of first degree burglary.  (§ 220, subd. (b).)  As to Rebecca W. and Y.Y., he was convicted of first degree burglary with another person present.  (§§ 459, 460, subd. (a), 667.5, subd. (c)(21).)  As to the third victim, identified only as "Jane Doe No. 1," appellant was convicted of forcible rape (§ 261, subd. (a)(2)) and forcible oral copulation.  (§ 288a, subd. (c)(2)(A).)  The incident involving Jane Doe No. 1 occurred three months before

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

the incident involving Rebecca W. and Y.Y. The jury found true several sentencing enhancements. Appellant was sentenced to prison for 120 years to life.

Appellant contends that the trial court erroneously admitted statements he made to the police following his arrest for the offenses committed against Rebecca W. and Y.Y. He maintains that the statements were obtained in violation of *Miranda* (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694) because the police questioned him after he had invoked his right to counsel. Appellant's other contention concerns his conviction of assaulting Y.Y. during the commission of first degree burglary with the intent to commit rape, sodomy, or oral copulation. (§ 220, subd. (b).) Appellant argues that the trial court erroneously refused to instruct the jury on the lesser included offense of simple assault. We affirm.

*Facts*

With one exception, the facts relating to the offenses committed against Jane Doe No. 1 are not relevant to the issues on appeal. We limit our summary of the facts to this one exception and the offenses committed against Rebecca W. and Y.Y.

Rebecca W. was asleep in bed inside her apartment when appellant, a stranger, entered her bedroom and awakened her. He got on top of her and held a knife to her neck. When she screamed, appellant said in Korean, "Just be quiet or I'm going to kill you and your roommate." Rebecca W.'s roommate was Y.J. They were from Korea and were students at U.C.L.A.

Rebecca W. stopped screaming. Appellant tied her wrists and ankles and put tape over her mouth. He left Rebecca W.'s bedroom and entered Y.Y.'s bedroom. Rebecca W. removed the tape from her mouth and telephoned 911.

Y.Y. was asleep in bed. Appellant awakened her, and she started screaming. He got on top of her while she was lying on her back, held a knife to her neck, and said in Korean, "Stay still, otherwise I'm going kill you." Appellant tied Y.Y.'s wrists and ankles and put tape over her mouth. He turned her over onto her stomach and positioned her so that she was on her knees with her chest and stomach "flat on the bed." Her buttocks were elevated and exposed. Three months earlier, appellant had

2

similarly positioned Jane Doe No. 1 before inserting his penis into her vagina from behind. Appellant touched Y.Y.'s thigh and buttocks. He put his hand close to her vagina but did not touch it. He did not touch her breasts.

Appellant left Y.Y.'s bedroom and went to Rebecca W.'s bedroom. When he left, Y.Y. was still on her knees with her buttocks elevated and exposed. Appellant said, "Stay in that position, otherwise you die."

Appellant told Rebecca W. "that he would have sex with [her] roommate first and then come back for her later." Appellant left Rebecca W.'s bedroom but did not have sex with Y.Y. He returned naked to Rebecca W.'s bedroom and forced her to orally copulate him.

Rebecca W. heard the police banging on the front door. Appellant broke the glass in a bedroom window and jumped through the opening. The police followed a trail of blood that started directly behind the apartment building where Rebecca W. and Y.Y. resided. At the end of the trail, they found appellant and arrested him. Appellant spontaneously said, "I didn't do it."

After waiving his *Miranda* rights, appellant gave the police his version of the incident. He said that he had followed Rebecca W. home because "she was really cute" and "looked like [his] girlfriend." He went to the second floor of the apartment building and stood by the elevator. He saw Rebecca W. get out of the elevator and enter an apartment. Appellant went to the third floor and then returned to the second floor. He walked to the front door of Rebecca W.'s apartment and noticed that it was unlocked. He opened the door and went inside. His mind was thinking "a terrible something." He tied up Rebecca W. and put duct tape over her mouth to stop her from screaming. He then walked into Y.Y.'s bedroom and "tied her up to" because he "was afraid that she's going to run away or call the cop[s] or yell out." He did not intend to commit a sexual act upon Y.Y. He was interested in Rebecca W. As to Y.Y., appellant stated: "She wasn't the girl that I looked at. I wasn't going to expect that she's there." Appellant returned to Rebecca W.'s bedroom and forced her to orally

3

copulate him.  When the police knocked on the front door, he ran to a window, kicked out the glass, and jumped.  He cut his hand and was bleeding.

*Miranda Advisement*

At the time of the *Miranda* advisement, appellant was in an emergency room receiving treatment for his injuries.  The advisement was given in English.  Appellant told the officer who gave the advisement, Detective Lopez, that he understood English.  The advisement was recorded.  Pursuant to a transcript of the recording, the following colloquy occurred:

"[Detective Lopez]: If you cannot afford an attorney, one will be appointed for you free of charge before any question if you want.  Do you understand?

"[Appellant]: Can I ask you one question?

"[Detective Lopez]: Yeah.

"[Appellant]: I could have the lawyer to?

"[Detective Lopez]: What's that?

"[Appellant]: I could have a lawyer to?

"[Detective Lopez]: You can have your lawyer at any time but right now we're in a hospital.

"[Appellant]: Okay.

"[Detective Lopez]: Right now I am here and I'd like to talk to you right now.

"[Appellant]: Okay.

"[Detective Lopez]: The way this reads is, you cannot afford an attorney one will be appointed for you free of charge before any question if you want.

"[Appellant]: Can I do that?

"[Detective Lopez]: What's that?

"[Appellant]: Can I do that then?

"[Detective Lopez]: Can I what?

"[Appellant]: *The very last one is the attorney for free*.  [Italics added.]

"[Detective Lopez]: The courts are the one that determine if you get an attorney appointed for you for free.

4

"[Appellant]: Okay.

"[Detective Lopez]: The only way we can talk right now okay? Is you have to waive those rights. Meaning you have to say you understand those rights. The last question I'm going to ask you if you want to talk to me right now obviously without an attorney present. Okay? In order for me to get your version of the story right now you have to waive that right. Meaning you have to give up that right.

"[Appellant]: Okay.

"[Detective Lopez]: Okay. Do you understand that?

"[Appellant]: So in order to talk to you, I have to give up those rights?

"[Detective Lopez]: Right now. Yes. If you want to. Okay?

"[Appellant]: I don't (Unintelligible). It's kind of (Unintelligible).

"[Detective Lopez]: Okay. The rights that I'm reading to you, that's called your Miranda rights. Meaning those are the rights that you have. After I read each one to you, I said, 'Do you understand?' and you said you do. Okay? The last question I asked you, I said if you cannot afford an attorney, one will be appointed for you free of charge before any questioning if you want. Okay? Do you understand that?

"[Appellant]: Yes I do.

"[Detective Lopez]: Okay. The last question is do you want to talk to me about what happened? Do you want to talk to me about, tell me your version of what happened? Because all I have is what somebody else tells me. I don't, without listening to you I don't know what you want me to say, what you want, what you were thinking, what you don't want me to say. Okay?

"[Appellant]: Yeah. Yes I do want to talk to you.

"[Detective Lopez]: Okay. So you want to talk to me?

"[Appellant]: Yes.

"[Detective Lopez]: Yes. Okay. Mr. Park can you tell me what happened this morning?"

*Trial Court's Factual Finding*

After listening to the recording of appellant's *Miranda* advisement, the trial court found that "[t]he transcript [of the recording] is wrong" in indicating that appellant's statement, "The very last one is the attorney for free," is an "assertion." The court remarked that this statement "appears to be in the interrogatory form." The court continued: "[This] is not a declaration of a desire for an attorney, rather it is a request for clarification . . . ."

*Standard of Review*

" ' "[W]e accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if supported by substantial evidence. We independently determine from the undisputed facts and the facts properly found by the trial court whether the challenged statement was illegally obtained." [Citation.]' [Citation.]" (*People v. Enraca* (2012) 53 Cal.4th 735, 753.)

*Appellant Did Not Clearly Assert His Right to Counsel*

The United States Supreme Court has "held that law enforcement officers must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation." (*Davis v. United States* (1994) 512 U.S. 452, 454 [114 S.Ct. 2350, 129 L.Ed.2d 362].) "[T]he suspect must unambiguously request counsel. . . . [H]e must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, [the law] does not require that the officers stop questioning the suspect. [Citation.]" (*Id.*, 512 U.S. at p. 459.) Thus, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [the high court's] precedents do not require the cessation of questioning. [Citations.]" (*Ibid.*)

Appellant's references to an attorney were ambiguous and equivocal so that a reasonable officer would have understood them to mean that he *might* be invoking his

right to counsel, not that he was actually invoking that right. Appellant questioned Detective Lopez about his right to counsel. He never "clearly asserted his right to have counsel present during custodial interrogation." (*Davis v. United States*, *supra*, 512 U.S. at p. 454.) We accept the trial court's finding that appellant's statement, "The very last one is the attorney for free," was a question rather than an assertion. (*People v. Enraca*, *supra*, 53 Cal.4th at p. 753.)

Detective Lopez did not mislead appellant when he said, "You can have your lawyer at any time but right now we're in a hospital." "[A]dvising an accused that appointed counsel is presently unavailable does not violate *Miranda*. [Citation.]" (*People v. Lujan* (2001) 92 Cal.App.4th 1389, 1402.) ". . . *Miranda* does not require that attorneys be producible on call or that police 'keep a suspect abreast of his various options for legal representation.' [Citation.]" (*People v. Smith* (2007) 40 Cal.4th 483, 503.)

Nor did Detective Lopez mislead appellant when he said, "The courts are the one that determine if you get an attorney appointed for you for free." In *People v. Enraca*, *supra*, 53 Cal.4th at p. 756, our California Supreme Court concluded: "There is no merit to defendant's claim that [Detective] Schultz should have told him that he could consult with appointed counsel immediately. Defendant was correctly informed that he could acquire his own counsel or, if he was eligible, counsel would be appointed when he was arraigned. 'That is in fact when his right to counsel attached. [Citations.]' "

"Finally, any ambiguity regarding [appellant's] meaning was dispelled" when, at the end of the advisement, he said that he understood his right to free appointed counsel before questioning but that he wanted to talk to Detective Lopez now. (*People v. Tully* (2012) 54 Cal.4th 952, 991.) "Thus, appellant did not unambiguously invoke his right to counsel during the . . . interrogation and the police were not required to cease their questioning." (*Ibid.*)

7

*Trial Court's Refusal to Instruct on Lesser Included Offense of Simple Assault*

As to Y.Y., appellant was convicted of assault with intent to commit rape, sodomy, or oral copulation during the commission of first degree burglary in violation of section 220, subdivision (b). The statute provides: "(b) Any person who, in the commission of a burglary of the first degree, . . . assaults another with intent to commit rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 shall be punished by imprisonment in the state prison for life with the possibility of parole." Appellant contends that the trial court erroneously refused to instruct the jury on the lesser included offense of simple assault in violation of section 240.

The trial court initially stated that it was required to instruct on simple assault. It said: "[Appellant] said he didn't intend to sexually assault [Y.Y.]. So that would support the [section] 240 [lesser included offense]." The court continued: "[T]he jury might credit [appellant's] statement . . . because there was no actual sex offense perpetrated on [Y.Y]., at least no alleged offense." But the prosecutor argued that if the jury "believed [appellant's] interview with [Detective] Lopez that he had no attraction to [Y.Y.] and no sexual interest in her at all," appellant would still be guilty of the greater offense because he had assaulted her with the intent of "furthering the sexual assault on Rebecca W."

The following day, the trial court decided that appellant could be convicted of violating section 220, subdivision (b) if he had assaulted Y.Y. with the intent of committing rape, sodomy, or oral copulation upon Rebecca W. The court concluded that this "removes any justification for a lesser included offense of [section] 240" since "if the jury were to believe [appellant's] statement that he tied [Y.Y.] with the intent to assault [Rebecca W.]," he would still be guilty of the greater offense.

In interpreting section 220, subdivision (b), the trial court relied on *People v. Green* (1924) 65 Cal.App. 234 (*Green*). At the time of the *Green* decision, section 220 provided: " 'Every person who assaults another with intent to commit rape, the infamous crime against nature [sodomy], mayhem, robbery, or grand larceny, is punishable by imprisonment in the state prison not less than one nor more than

8

fourteen years.' " (*Id*., at p. 235.) In *Green* the defendant was charged with assaulting Paul Maupin with the intent to commit the infamous crime against nature. The defendant contended that the information was insufficient because although it named Maupin as the victim of the assault, it did not name "the intended victim of the infamous crime which constituted the object of the assault." (*Ibid*.) The appellate court rejected defendant's contention: "The ultimate fact constituting the offense, as defined by section 220 of the Penal Code, was an assault upon the person of Paul Maupin, with such intent [to commit the infamous crime], and if [defendant's] objective were Maupin or another person the statute was nevertheless violated, and no allegation of the other intended offense except by way of naming it was necessary." (*Id*., at p. 237.) Thus, "had [defendant] intended committing a simple assault upon the said Maupin for the purpose of ridding himself of the latter's opposition, in order that he might accomplish his [sexual] purpose upon the person of another . . . we think [the defendant's acts] would still fall within the scope of section 220 of the Penal Code and would amount to no lesser offense." (Id., at p. 236.)

Appellant does not contend that *Green* was wrongly decided. He argues that the trial court erroneously refused to instruct on the lesser included offense of simple assault because substantial evidence supported that offense. An instruction on a lesser included offense is " ' "required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]" ' that the lesser offense, but not the greater, was committed." [Citation.]' [Citation.]" (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 477.)

The record contains no substantial evidence that appellant was guilty only of simple assault. Based on appellant's version of events, he assaulted Y.Y. with the intent of facilitating the commission of a sexual offense against Rebecca W. Appellant told the police that he had tied up Y.Y. because he was afraid that she was "going to run away or call the cop[s] or yell out." In his opening brief, appellant asserts that

Rebecca W. "was [his] target." Pursuant to *Green*, an assault upon Y.Y. with the intent to commit rape, sodomy, or oral copulation upon Rebecca W. constitutes a violation of section 220. Thus, even if the jury had believed appellant, it could not reasonably conclude "that the lesser offense, but not the greater, was committed." [Citation.]' [Citation.]" (*People v. Sattiewhite*, *supra*, 59 Cal.4th at p. 477.)

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

10

Mark E. Windham, Judge

Superior Court County of Los Angeles

_____

Nancy L. Tetreault, under appointment by the Court of Appeal, for Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Tita Nguyen, Deputy Attorney General, for Plaintiff and Respondent.